# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No. 20-970M(NJ)
2003 Silver Mercedes Benz Sedan bearing WI License )
Plate #AAC-211, VIN #WDBUF65J33147298, more fully )
described in Attachment A. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, USC Section 841(a) | Distribution of controlled substance |

The application is based on these facts:
See attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Rybarik, FBI TFO - Racine
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____telephone____ *(specify reliable electronic means)*.

Date: 7/10/2020

*Judge's signature*

City and state: Milwaukee, Wisconsin                    Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, David Rybarik, being first duly sworn on oath, on information and belief state:

### I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE

1. I make this affidavit in support of an application for a search warrant for a silver 2003 Mercedes Benz sedan bearing Wisconsin License Plate AAC-2112, registered to Charnice E Tibbs, (06/21/1984), at 574 Shelbourne Ct Apt 11, Racine, WI with VIN WDBUF65J33A147298 which is located at the Racine Police Department (RAPD) impound lot, 2215 S Memorial Dr., Racine, WI.

2. I was deputized as a TFO with the FBI in 2007. In addition to being a TFO with the FBI, I have been a Law Enforcement Officer for the Kenosha and Racine Police Departments, as well as a Detective employed by the Racine Police Department, since 1999. I have received training in the enforcement of federal narcotics laws. I have also been involved in a number of narcotics trafficking and gang investigations, including multiple long term investigations. I have participated in complex drug trafficking investigations, including investigations using wiretaps. Based on my experience and training, I am familiar with various investigative techniques including, but not limited to, debriefing defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances; surveillance; and the analysis of documentary and physical evidence. I have been involved in various types of electronic surveillance, including the use of wire interceptions and consensual recordings.

3. As part of my training and experience, I have participated or assisted in numerous state and federal search warrants for narcotics related offenses. These warrants involved the search of locations ranging from residences and businesses of targets, their associates and relatives, "stash houses" (houses used as controlled substance/money storage locations), vehicles, and storage

facilities. Evidence searched for, and recovered, in these locations have included controlled substances, records pertaining to the expenditures and profits realized there from, monetary instruments, and various assets that were purchased with the proceeds of drug trafficking. I have had numerous discussions with other experienced law enforcement officers, and have conducted and been present at numerous interviews of self-admitted narcotics traffickers and cooperating defendants concerning the manner in which drug traffickers and money launderers operate.

4. In the course of my employment and experience, I know that it is common for persons involved in the trafficking of controlled substances to routinely utilize autos for procuring, delivering, and storage of said controlled substances. It is also common for persons to register vehicles under other person's names, in order to escape detection from law enforcement.

5. In the course of my employment and experience, I know that it is common for persons involved in the trafficking of controlled substances to utilize autos to conceal various controlled substances, controlled substance paraphernalia, firearms, and U.S. Currency.

6. In the course of my employment and experience, I know that it is common for individuals involved in the sale of controlled substances to be armed with firearms and also store firearms in their residences and automobiles

7. In the course of my employment and experience, I know that it is common for persons involved in the sales of controlled substances to be affiliated with street gangs. I further know that firearms are frequently used by street gangs to protect their respective territory, residences and vehicles, and for the protection of their controlled substances.

8. In the course of my employment and experience, I know that it is common to find various types of electronic devices, including but not limited to cellular telephones, electronic paging devices, electronic rolodex units, electronic personal telephone directories, and electronic devices attached to telephone lines and/or telephones; all which have electronic memory

components that record telephone numbers and other data, and that these devices are commonly used by persons involved in the sale of controlled substances to maintain data (inclusive of telephone numbers) of customers and suppliers and that the recovery of these items and the data contained therein will further aide in the identification process of customers and suppliers.

9. In the course of my employment and experience, I have also become aware of techniques and practices used by narcotics traffickers to avoid detection by law enforcement. Among these techniques are the use of counter surveillance, multiple locations at which to conduct narcotics related activities, hidden compartments in vehicles used to hide narcotics and currency, the use of pagers, pay phones, mobile telephones, voice mail, texting, instant messaging, email, and the use of numerous associates and "workers" to further their criminal organization. I have also become aware of the various techniques individuals use to conceal the source or nature of drug proceeds. Among the techniques utilized are the purchase of assets and financial instruments in nominee names using cash and "structuring" transactions so as to avoid certain reporting requirements of financial institutions.

10. Based on my training and experience, and on conversations with other experienced law enforcement officers who have participated in drug trafficking and money laundering related searches, it is my opinion that:

    a. People involved in large scale drug trafficking and/or money laundering almost always keep records of their transactions. Because drug trafficking generates large sums of cash, it requires the keeping of detailed records as to the distribution of narcotics as well as the laundering of the proceeds. Drug traffickers and money launderers typically keep documents demonstrating the purchase of assets, bank records, and other evidence of the accumulation of wealth through their illegal activities, as well as the methods used to launder the proceeds. Such records also typically provide evidence as to the identity of

additional criminal associates who are facilitating the laundering of the narcotics proceeds on behalf of the organization. These records, unlike controlled substances, are often maintained for long periods of time, sometimes several years, based on my training and experience. Such records are often maintained under the dominion and control of the drug traffickers and money launderers, and as such, are often kept in their residences, businesses and/or storage facilities.

    b. Drug traffickers who amass the proceeds of their enterprise often secure their money within secure locations within their dominion and control, often in their residences, businesses, vehicles, and storage facilities, and often in safes or other secure containers.

    c. Large scale drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number of people within the organization. As a result, people who traffic in narcotics or launder money for such organizations will possess documents that identify other members of their organization, such as telephone books, address books, handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates.

11. Based upon my training, experience, and participation in financial investigations involving money laundering or other efforts by defendants to conceal assets to avoid the detection of those assets by law enforcement, I have learned that:

    a. Individuals attempting to conceal their illegal activities will frequently place assets obtained with proceeds of criminal activity in the names of friends, relatives, trusted associates, or fictitious entities to avoid detection of these assets by the Internal Revenue Service and other government agencies. Even though these assets are in the

names of others, the true owners will continue to exercise dominion and control over the use, ownership, and disposition of these assets.

b. Individuals involved in money laundering will utilize checking and savings accounts at financial institutions in the names of relatives, friends, trusted associates, or fictitious business entities. These relatives and associates also conduct financial transactions on the individuals' behalf utilizing monetary instruments, including wire transfers of monies into foreign accounts outside the United States.

c. Individuals involved in money laundering will frequently have some sort of legitimate income or funds and co mingle their criminal profits with their legitimate funds. This helps conceal the illegal source. Monetary instruments can then be acquired against the funds in the account or a check can simply be written on the account with limited suspicion.

d. Individuals involved in money laundering will frequently allow third parties and/or co-conspirators to make cash deposits to their bank accounts. An individual depositing currency is not typically required to show identification to banking officials, therefore, a third party can go to a bank branch anywhere in the U.S. and deposit cash to an account that is not held in their name. Because the funds are deposited in cash, the account holder, who can be in a different state, can then go to their local bank branch and immediately withdraw the funds in cash. This method of transferring money provides for an almost instantaneous transfer of funds that could not be achieved through the shipping of bulk currency via common carrier and maintains the virtual anonymity of the third party making the deposit which would not be possible if transferring money through wire a service business such as Money Gram or Western Union.

e. Individuals who are attempting to conceal their illegal activities from the IRS and other government agencies commonly hide records that will establish their true ownership of assets. Such records typically include: bank statements, cashier's check receipts, money order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, automobile titles, property deeds, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices.

f. Individuals who seek to hide such records typically keep those records in a place that is secure but easily accessible, such as their personal residences, garages, automobiles, storage facilities, safety deposit boxes, briefcases, purses, and safes or security storage containers.

12. I am a deputized Federal Task Force Officer, with the United States Department of Justice. As such, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7) and 21 U.S.C. § 878, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

13. Based on the investigation to date, due to utilizing and receiving a positive indication from a trained K9 dog on an open air sniff, I believe there is controlled substances within a silver 2003 Mercedes Benz sedan bearing Wisconsin License Plate AAC-2112, registered to Charnice E Tibbs, (06/21/1984), at 574 Shelbourne Ct Apt 11, Racine, WI with VIN WDBUF65J33A147298 which is located at the Racine Police Department (RAPD) impound lot, 2215 S Memorial Dr., Racine, WI.

14. This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other local law enforcement officers during the course of their

official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, official records, search warrants, recorded statements, law enforcement surveillance, court records, and public records which I consider to be reliable as set forth herein. Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation. I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the search warrant.

15. Because this affidavit is submitted for the limited purpose of securing search warrants for the above-described property, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrants

## II. DESCRIPTIONS OF THE LOCATIONS AND PROPERTY TO BE SEARCHED

1. As further described in Attachment A, the property to be searched is the following vehicle:

   a. A silver 2003 Mercedes Benz sedan bearing Wisconsin License Plate AAC-2112, registered to Charnice E Tibbs, (06/21/1984), at 574 Shelbourne Ct Apt 11, Racine, WI with VIN WDBUF65J33A147298 which is currently located at the RAPD Impound Lot, 2215 S Memorial Dr., Racine, WI.

      i. The specified unlawful activity involved in the offense is the distribution of controlled substances and conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1).

## III. PROBABLE CAUSE

1. On 6/25/20 the United States District Court for the Eastern District of Wisconsin issued a felony arrest warrant for Raynard A Hall, DOB 06/08/1986 for possession of a firearm by

7

a felon, possession with intent to distribute a controlled substance of heroin and fentanyl, and possession of a firearm in relation to a drug trafficking crime.

2. On 12/18/2019 the Racine Police Department executed a search warrant on Raynard Hall's residence in the City of Racine. During the execution of the warrant, Hall was found to be in possession of a .380 semi-automatic handgun, a large amount of heroin and fentanyl, and U.S. Currency.

3. After learning of Raynard Hall's federal arrest warrant, Investigator Michael Seeger began conducting surveillance on Hall's new residence, 574 Shelbourne Court Apartment 11, which is in the City of Racine, WI.

4. While conducting surveillance, Inv. Seeger observed Raynard Hall at 574 Shelbourne Court Apartment 11 on every working day since learning of the warrants

5. During Inv. Seeger's investigation, he learned of two vehicles parked outside of Hall's residence, both of which are registered to Hall's fiancé, Charnice Tibbs. The two vehicles are described as follows:

    a. A silver 2003 Mercedes Benz sedan bearing Wisconsin License Plate AAC-2112, registered to Charnice E Tibbs, (06/21/1984), at 574 Shelbourne Ct Apt 11, Racine, WI with VIN WDBUF65J33A147298

    b. A white 2009 Dodge Grand Caravan bearing Wisconsin License Plate AEY-3934, registered to Charnice E Tibbs, (06/21/1984), at 574 Shelbournce Ct Apt 11, Racine, WI with VIN 1D8HN44E59B505973

6. During Inv. Seeger's investigation, he observed Hall open and enter the mentioned silver Mercedes Benz parked outside his residence. Inv Seeger also observed Hall operating the mentioned white Dodge Caravan during his travels.

7. On July 9, 2020, Inv. Seeger observed the above-mentioned silver Mercedes Benz parked in the 4100B Erie St in the City of Racine, facing north against the east curb. The Mercedes Benz was parked, unoccupied, on a public street. It should be noted the 4100B Erie is approximately ½ city block West and ½ city block South of Hall's residence. Inv. Seeger observed the mentioned white Dodge Caravan parked in a parking lot directly outside Hall's apartment.

8. On July 9, 2020, Racine Police Department investigators observed Hall exit 574 Shelbourne Court Apartment 11 and begin walking towards the silver Mercedes Benz parked in the 4100B Erie St in the City of Racine. Hall's direction of travel was directly towards the Mercedes Benz. RAPD Investigators stopped and took Hall into custody near the intersection of Shelbourne Ct and Erie St. See RAPD complaint number 20-27738.

9. RAPD Investigators located the following items in Hall's possession:

   a. A Mercedes Benz key fob that activated/worked the mentioned silver Mercedes Benz listing to Hall's fiancé, Charnice Tibbs.

   b. Two functioning cell phones. One Apple Iphone, model A1633, with a cracked screen and one Alcatel flip style phone.

   c. A wallet containing Hall's IL-ID card, various miscellaneous cards, and $100.00 dollars of US Currency in $20.00 dollar denominations.

   d. A functioning Apple watch.

10. Due to the totality of the circumstances, Inv. Seeger requested a K9 dog to conduct an open air sniff of the exterior of the silver Mercedes Benz. Canine Handler PO Nicole Knierim of the Mount Pleasant Police Department (MPPD) responded with K9 Brutus. PO Knierim conducted an open air sniff around the silver Mercedes Benz and received a positive indication from K9 Brutus of controlled substances.

11.     PO Knierim is a sworn police officer and trained K9 Handler and her statements are based upon her personal knowledge and observations.

12.     RAPD Investigators subsequently had the mentioned silver Mercedes Benz towed to the RAPD Impound lot, 2215 S Memorial Dr.

## CONCLUSION

13.     Based on the facts contained within this affidavit, I believe that probable cause exists to believe that evidence of the offense of Possession of Controlled Substances, violation of 21 U.S.C. §§ 841(a)(1), will be found in the following property:

   a.     Attachment A) A silver 2003 Mercedes Benz sedan bearing Wisconsin License Plate AAC-2112, registered to Charnice E Tibbs, (06/21/1984), at 574 Shelbourne Ct Apt 11, Racine, WI with VIN WDBUF65J33A147298

   b.     Attachment B) seize the items described

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

A silver 2003 Mercedes Benz sedan bearing Wisconsin License Plate AAC-2112, registered to Charnice E Tibbs, (06/21/1984), at 574 Shelbourne Ct Apt 11, Racine, WI with VIN WDBUF65J33A147298, which is located at the Racine Police Department Impound Lot, 2215 S Memorial Dr., Racine, WI.

11

## ATTACHMENT B

## PROPERTY TO BE SEIZED

1) Controlled substances, related paraphernalia; including packing materials, weighing devices, other related paraphernalia used to prepare, package, or store controlled substances.

2) Firearms, firearms paraphernalia, firearm boxes, firearm documents and receipts.

3) U.S. Currency

4) gang related material.

5) electronic equipment verified as stolen or with serial numbers removed or altered.

6) electronic devices that record data, i.e., telephone numbers & messages inclusive of the data contained within the electronic memory of the device.

7) documents, bank records, and related paraphernalia, including packaging materials, records, documents of transactions and documents or other items which can establish who is in control of the property.